IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

IN RE MICROSOFT CORP. ANTITRUST    *
LITIGATION                          *
                                    *
THIS Document relates to:           *    MDL 1332
                                    *
City and County of San Francisco, et al.  *  Civil No. JFM-04-3705
v. Microsoft Corp.                  *
                                  *****

OPINION

Five California cities and counties[1] have brought this action against Microsoft seeking monetary damages for alleged violations of two California statutes, the Cartwright Act, Cal. Bus. & Prof. Code §§16720 *et seq.*, and the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code, §17200 *et seq.*, prohibiting anti-competitive behavior and unfair business practices. Plaintiffs sue on their own behalf and on behalf of all other California governmental entities. Microsoft has filed a motion to dismiss, contending that all plaintiffs' claims are barred by limitations and that the claims asserted under the UCL are barred because plaintiffs, as municipal corporations, lack standing to sue. Microsoft's motion will be granted in all respects. However, because plaintiffs argue that Microsoft has continued to engage in anti-competitive behavior up to the present, plaintiffs will be granted leave to amend to assert claims under the Cartwright Act for damages they have allegedly suffered within four years of the filing of the complaint.

I.

---

[1] The named plaintiffs are the City and County of San Francisco, County of Santa Clara, City and County of Los Angeles, County of San Mateo, and County of Contra Costa.

Plaintiffs allege that more than fifteen years ago Microsoft began to enter into combinations to restrain trade, destroy competition and monopolize world markets. Plaintiffs also allege that Microsoft's unlawful conduct has continued to the present. Plaintiffs, who have purchased Microsoft operating system and application software over the years, seek to recover damages they have allegedly suffered from February 18, 1995, to the present as a result of Microsoft's alleged illegal activity.

On February 18, 1999, plaintiffs' present counsel filed a class action ("the *Lingo* action") in San Francisco Superior Court on behalf of a class of all California purchasers of Microsoft operating system and applications software. The class allegations in the complaint in that action were sufficiently broad to include governmental entities, such as the plaintiffs in this case. However, on March 10, 2000, plaintiffs' counsel filed a renewed motion for class certification that expressly excluded governmental entities. The Superior Court certified the class, as defined by plaintiffs' motion, on August 29, 2000. On October 16, 2002, the Superior Court, upon motion by plaintiffs, modified the class certification but only to extend the class period. The modification did not expand the class to include governmental agencies. On July 26, 2004, the Superior Court granted final approval of a settlement in the *Lingo* action. Appeals from the approval order are presently pending.

Plaintiffs instituted this action on August 27, 2004, in the San Francisco Superior Court. The action was filed approximately one month after the court approved the settlement in the *Lingo* action. Microsoft removed the action to the United States District Court for the Northern District of California. The MDL Panel thereafter transferred the action to this court.

II.

Both the Cartwright Act and the UCL contain four year limitations periods. Cal. Bus. & Prof.

Code §§ 16750.1 and 17208. On their face, these provisions would appear to bar plaintiffs from maintaining any action against Microsoft for acts that occurred more than four years before this suit was filed or for damages plaintiffs suffered more than four years before the suit was filed. Plaintiffs argue, however, that limitations have not run against them because of the doctrine of *nullum tempus occurit regit ("nullum tempus")*, the holding in *Wyatt v. Union Mortgage Company*, 24 Cal. 3d 773 (Cal. 1979), and the doctrine of equitable tolling. Plaintiffs' arguments are unpersuasive.

### *Nullum Tempus*

Under the *nullum tempus* doctrine a sovereign is exempt from the operation of statutes of limitation unless the statutes are expressly made applicable to governmental entities by the legislature. *See generally Guaranty Trust Co. of New York v. United States*, 304 U.S. 126 (1938). The doctrine is part of the law of California. *See Marin Healthcare District v. Sutter Health*, 103 Cal. App. 4th 861, 873 (2002) ("The rights of the sovereign 'are not barred by the lapse of time unless by legislation the immunity is expressly waived.'")

Indeed, under California law the scope of the *nullum tempus* doctrine appears to be broader than that recited by the Supreme Court in *Guaranty Trust* in that it seems to extend to agencies of the state and to municipal corporations, including counties and their instrumentalities. *See, e.g., Marin Healthcare District*, *supra*; *Philbrick v. State Personnel Board*, 53 Cal. App. 2d 222, 228 (1942); *County of Yolo v. Barney*, 79 Cal. 375 (1889). *But cf. City of Los Angeles v. County of Los Angeles*, 9 Cal. 2d 624, 627 (1937) (stating "it is well settled generally that municipalities are subject to statutes limiting the time for commencement of actions" but deciding the case on a narrower ground). However, counties and municipalities have been permitted to avail themselves of the *nullum tempus*

3

doctrine only in cases where they are seeking to vindicate their public rights (as opposed to their private rights), such as recovering public land to which they hold title.

Although the distinction between public and private rights sometimes may be difficult to draw, in this case it is clear that the rights plaintiffs are seeking to assert are private in nature. Of course, the state of California has a public interest in enforcing its antitrust and unfair competition laws. However, the state itself vindicated this interest in joining with other states and obtaining injunctive relief against Microsoft. *See New York v. Microsoft Corp.*, 224 F. Supp. 2d 76 (D.D.C. 2002). But the state purposely chose not to pursue a claim for monetary damages, and the claims asserted by plaintiffs in this case (for a partial refund of the price they paid for software) allegedly rose from commercial contracts between themselves and Microsoft. The untimely assertion of these claims therefore is not saved by the *nullum tempus* doctrine. *See generally City of Fullterton v. Orange County,* 140 Cal. App. 464, 467-69 (1934); *Montgomery County v. Microvote Corp.*, 23 F. Supp. 2d 553, 555-56 (E.D. Pa. 1998); 51 Am. Jur. 2d *Limitations of Actions* § 81 (2004); *John F. Dillon*, *Law of Municipal Corporations* § 533, at 517 (1872).

### *The Wyatt Doctrine*

In *Wyatt v. Union Mortgage Company*, 24 Cal. 3d 773 (1979), the California Supreme Court held that "when a civil conspiracy is properly alleged and proved, the statute of limitations does not begin to run on any part of a plaintiff's claims until the 'last overt act' pursuant to the conspiracy has been completed." *Id.* at 786. Relying upon *Wyatt*, plaintiffs contend that because Microsoft has continued to commit overt acts in furtherance of an unlawful conspiracy up to the present, limitations have not begun to run and they may recover for any damages resulting from the conspiracy, regardless

4

of when these damages were suffered.

As an initial matter, it is noteworthy that plaintiffs' contention is inconsistent with their allegations and claims for relief both in the complaint in this action and in the complaint in the *Lingo* case. In both complaints the only damages sought are those that were suffered within four years from the date the *Lingo* complaint was filed.[2] Moreover, California courts do not apply the *Wyatt* doctrine where it would be inconsistent with the terms of the underlying statute of limitations. *See, e.g.*, *People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys., Inc.*, 95 Cal. App. 4th 709, 724-25 (2002). That limiting principle is dispositive of plaintiffs' claims under the Cartwright Act. Cal. Bus. & Prof. Code § 16750.1 provides "[a]ny civil action to enforce any cause of action for a violation of this chapter shall be commenced within four years after the cause of action accrued." In section 16750.1, as in the limitations provision of the Franchise Investment Law that was at issue in *SpeeDee*, "[t]he Legislature has not referred directly or inferentially to delayed accrual based on when damages sustained or because of fraud nor is there any reference . . . to tolling based upon a conspiracy." 95 Cal. App. 4th at 725. In contrast, the limitations provisions for criminal violations under the Cartwright Act does expressly refer to the "last overt act" committed by defendant and permits a criminal action to "be commenced at any time within four years after the commission of the last act." Cal. Bus. & Prof. Code § 16755.

I also am not persuaded that the California Supreme Court would extend its holding in *Wyatt* to

---

[2] Plaintiffs' reliance upon the *nullum tempus* doctrine likewise is inconsistent with plaintiffs' claim for damages. If the doctrine applies, plaintiffs would not be limited to damages going back four years from the date the *Lingo* complaint was filed.

the circumstances of this case. *Wyatt* arose in the context of a continuing borrower/lender relationship between the parties in which "[t]here was substantial evidence that [defendants] were involved in perfecting a scheme whose purpose was to trap [plaintiffs] on a financial 'treadmill' from which they could not escape." *Wyatt*, 24 Cal. 3d at 788. Likewise, in *People v. Beaumont Inv. Ltd.*, 111 Cal. App. 4th 102 (2003) the only case cited by plaintiffs under the UCL, plaintiffs were tenants under long-term leases that had been fabricated by defendants to avoid a rent control ordinance. It makes sense in cases such as *Wyatt* and *Beaumont*, in which the defendants had conspired to design and abuse a continuing relationship from which it was impractical for plaintiffs to escape, to hold that limitations do not begin to run until the last overt act in furtherance of the conspiracy is committed. In contrast, here there was no continuing relationship between Microsoft and plaintiffs. To the contrary, the parties engaged in arms-length commercial transactions, and nothing prevented or deterred plaintiffs from bringing an action for damages as soon as they had reason to know that Microsoft had violated the Cartwright Act and the UCL. Indeed, the *Lingo* case was brought before Judge Jackson issued his opinions in the federal government's antitrust action against Microsoft, and the countless civil cases that have been filed against Microsoft since Judge Jackson issued his findings of fact and conclusions of law demonstrate that there was no practical impediment preventing plaintiffs from instituting this action long ago.

### *Equitable Tolling*

"The filing of a class action tolls the statute of limitations 'as to all asserted members of the class.'" *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 350 (1983) (interpreting *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974)). "Once the statute of limitations has been tolled, it

6

remains tolled for all members of the putative class until class certification is [decided]." *Id.* at 354. Relying upon these principles and California's equitable tolling doctrine, plaintiffs contend that limitations was tolled as to them during the pendency of the *Lingo* action from February 18, 1999 to July 26, 2004.[3]

Microsoft does not dispute that plaintiffs were members of the putative class as originally alleged in the *Lingo* complaint and that limitations were tolled during part of the time that *Lingo* was pending. Microsoft argues, however, that tolling ceased on March 10, 2000, when class counsel in *Lingo* (the same counsel who presently represent plaintiffs) filed a motion for class certification excluding governmental entities from the class. Although the class definition subsequently was modified to expand its temporal scope, it never was modified to encompass governmental entities before final approval of a settlement was granted on July 26, 2004.

Microsoft's argument is well founded. The Fourth Circuit has addressed the issue, stating as follows:

> When a plaintiff moves for class certification by asserting an unambiguous definition of his desired class that is more narrow than is arguably dictated by his complaint, his asserted class for tolling purposes may be limited to that more narrow definition. It then follows that for parties outside that asserted class, tolling will be unavailable at least until such time as the plaintiff repudiates that definition of the class he seeks to have certified in a manner that provides adequate notice that his class definition has changed.

*Smith v. Pennington*, 352 F.3d 884, 893-94 (4th Cir. 2003) (citing *Sawtell v. E.I. du Pont de Nemours & Co.*, 22 F.3d 248 (10th Cir. 1994)); *Ganousis v. E.I. du Pont de Nemours & Co.*, 803

---

[3]Plaintiffs make the ancillary contention that the tolling issue cannot be decided on a motion to dismiss. This contention is without merit. The pertinent facts are all undisputed, and the only question is what legal consequences flow from those facts.

7

F. Supp. 149 (N.D. Il. 1992), is to the same effect.

Plaintiffs counter that California, not federal law, applies to the tolling question. Although that assertion is true, plaintiffs have not cited any California case that would dictate a different result. To the contrary, as Microsoft points out, the California Supreme Court has approvingly cited federal precedent under Rule 23 to determine whether a statute of limitations should be tolled in a class context. *See, e.g.*, *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1118-19, 1122-25 (1998). Likewise, the California Supreme Court has ruled that persons excluded from a class need not be given actual notice of that fact. *Woosley v. State*, 3 Cal. 4th 758, 793 (1992). ("Neither the decision in *American Pipe*, nor any other authority of which we are aware, requires that persons who are outside the class be notified of that fact.") (internal citation omitted).

II.

An action under the UCL may be prosecuted "by any person who has suffered injury in fact and has lost money or property as a result of such unfair competition." Cal. Bus. & Prof. Code § 17204. "Person" within the meaning of the UCL is defined by § 17201 as "natural persons, corporations, firms, partnerships, joint stock companies, associations and other organizations of persons." Because the UCL does not include municipal corporations within the term "corporations" or otherwise expressly authorize governmental entities to bring suit under its terms, Microsoft contends that plaintiffs have no standing to assert claims under the UCL. Microsoft buttresses this argument by relying upon a line of cases that hold a governmental entity is not a "person" against whom suit may be brought under the UCL. *See, e.g.*, *People for the Ethical Treatment of Animals, Inc. (PETA) v. California Milk Producers Advisory Bd.*, 125 Cal App. 4th 871, 876-79; *Community Memorial Hosp. v. County of Ventura*,

50 Cal. App. 4th 199, 208-209 (1996).

Plaintiffs respond that by statute counties are corporations, *see California Government Code* § 23004, and that cities have long been acknowledged to be "ordinary municipal corporations." *Metropolitan R. Co. v. District of Columbia*, 132 U.S. 1, 4 (1889). Therefore, according to plaintiffs, the inclusion of the word "corporations" in § 17204 in and of itself confers standing upon them even though it does not expressly mention governmental agencies.

As to cases such as *PETA* and *Community Memorial Hospital*, plaintiffs argue that they apply only in instances where a governmental entity is the party against whom a UCL claim is being asserted, not in instances where the governmental agency is the party asserting the claim. Plaintiffs posit that in the former situation regard for the doctrine of sovereign immunity requires a restrictive interpretation of the term "person," while in the latter situation that consideration is irrelevant. In support of this proposition, plaintiffs refer to various cases in which California courts have construed the term "person" to include a governmental agency within a statutory definition of "person" where the governmental agency is the party who has instituted suit and "infringement upon sovereign governmental powers" therefore is not implicated. *See, e.g., City of Los Angeles v. City of San Fernando*, 14 Cal. 3d 199, 276-77 (1975); *People v. Crow*, 6 Cal. 4th, 952, 959 (1993); *cf. Pacific Gas & Elec. Co. v. County of Stanislaus*, 16 Cal. 4th 1143, 1158-59 (1997).

Plaintiffs also rely upon the recent decision in *State ex rel. Harris v. PricewaterhouseCoopers LLP*, 125 Cal. App. 4th 1219 (2005), where the court held that the City and County of San Francisco is a "person" entitled to bring suit under California's False Claims Act. The FCA defines "person" to include "any natural person, corporation, firm, association, organization, partnership, limited liability

9

company, business or trust," but does not expressly refer to governmental agencies. *Cal. Gov't Code* § 12650. Therefore, *PricewaterhouseCoopers* on its face appears to support plaintiffs' position. However, the FCA is unlike the UCL in that the FCA previously has been interpreted to permit a suit *against* a governmental agency. *See LeVine v. Weis*, 68 Cal. App. 4th 758 (1998). In *LeVine* the court reasoned that the doctrine of sovereign immunity did not require a narrower construction of the FCA because "no governmental agency has the power, sovereign or otherwise, knowingly to present a false claim." *Id.* at 765.

Amidst the rather chaotic state of California law on the issue, it is not entirely clear whether a governmental agency may bring an action under the UCL. Plaintiffs, however, have not cited any authority that directly supports their position. In contrast, there is one California intermediate appellate decision that expressly holds that a governmental agency is not a "person" within the meaning of § 17204 and may therefore not bring an action under the UCL. *Santa Monica Rent Control Bd. v. Bluvshtein*, 230 Cal. App. 3d 308, 318 (1991).[4] That decision was rendered fourteen years ago and presumably if the California legislature believed it to be inaccurate, it would have amended § 17204 to cure the error. Moreover, in *PETA*, the court unequivocally stated that "we conclude that the CMAB [a governmental agency] cannot be considered a person under the UCL." 125 Cal. App. 4th at 879. In stating this conclusion, the court drew no distinction between cases in which the governmental agency is asserting the claim and cases where the claim is being asserted against the governmental agency.

---

[4]In its opinion in *Santa Monica Rent Control Board*, the court erroneously states that the Board is suing under the Unfair Practices Act ("UPA"). However, the statutory references are to §§ 17201 and 17204 of the California Business and Professions Code, which is the UCL.

There certainly is virtue in courts construing statutes to advance their underlying purpose. However, lest judges be accused of parodying parody, they cannot, like the Mad Hatter, change the meaning of words solely on the basis of the question being considered   In the final analysis, respect for the legislative process demands that courts not create asymmetry within a statute simply because of their own analysis of underlying policy interests.  Presumably, the legislature took these policy considerations into account when it enacted the statutory language itself.  Thus, it is a well settled principle of statutory construction that, absent legislative instructions to the contrary, statutory terms are to be construed consistently within the same statute. *See People v. Wells*, 12 Cal. 4th 979, 986 (1996) ("In construing a statute, unless a contrary intent appears, the court presumes that the Legislature intended that similar phrases be accorded the same meaning, particularly if the terms have been construed by judicial decision.") (internal citations omitted); *Alhambra Consol. Mines, Inc. v. Alhambra Shumway Mines, Inc.,* 239 Cal. App. 2d 590, 595 (1966) ("It is well settled that a word in a statute is presumed to have the same meaning throughout.").[5] I therefore find that just as counties and municipalities cannot be sued

---

[5]Microsoft also points out that the Cartwright Act, unlike the UCL, does expressly include "[t]he state and any of its political subdivisions and public agencies" within the definition of person entitled to recover under that statute. Cal. Bus. & Prof. Code § 16750(b). Plaintiffs contend that this fact is without significance because the Cartwright Act was amended in response to a court decision the California legislature believed was wrong.  Accordingly, in enacting the amendment to the statute that included governmental agencies within the definition of "person," the legislature also enacted the following explanatory legislation:

> Subdivision (b) is added to this section for the purpose of <u>clarification only</u> and is not to be construed or interpreted as an indication that the State or any of its political subdivisions or public agencies is not a person within the meaning of Section 16750 as originally enacted . . . The Legislature hereby further declares that <u>at the time of the original enactment of Section 16750, and at all time since, it intended that the State, its political subdivisions or public agencies, be included within the</u>

11

under the UCL, so too they cannot file suit under that statute.

A separate order granting Microsoft's motion to dismiss but giving plaintiffs leave to file an amended complaint as to their claims under the Cartwright Act is being entered herewith.

Date: April 18, 2005            /s/
                                J. Frederick Motz
                                United States District Judge

---

meaning of the word 'person.'"
Cal. Stats 1961, c. 1023, West's Annotated Cal. Codes, Bus & Prof. Code § 16750 (1997), Historical and Statutory Notes (emphasis added).

Plaintiffs go on to argue that if governmental agencies were included within the term "person" without any express reference to them in the Cartwright Act, it should properly be inferred that the term "person" as used in other statutes, such as the UCL, likewise include governmental agencies without express reference to them.

Again, plaintiffs' argument is not entirely without force. However, the amendment to the Cartwright Act was enacted in 1961. Likewise, California's Unfair Practices Act, adopted in 1941, also expressly includes governmental entities. Unfair Practices Act, Cal. Bus. & Prof. Code § 17021 (defining person to include "any person, firm, association, organization, partnership, business trust, company, corporation or municipal or other public corporation.") The UCL was not enacted until 1977. Although attempting to fathom the intent of the California General Assembly may be somewhat speculative, it seems reasonable to infer that given the precedents of the UPA and the Cartwright Act (as amended in 1961), the legislature would have expressly included governmental entities within the definition of "person" if it had meant to confer standing upon them to sue under the Act.